# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLAUDIA SAMPEDRO, DESSIE MITCHESON, KIM COZZENS, DENISE TRLICA a/k/a DENISE MILANI, JESSICA BURCIAGA, JENNIFER ZHARINOVA, BRENDA LYNN GEIGER, CIELO JEAN GIBSON a/k/a CJ GIBSON, JESSICA KILLINGS, JESSICA ROCKWELL, JOANNA KRUPA, MARTA KRUPA, SANDRA VALENCIA and SARA UNDERWOOD, | CIVIL ACTION NO.<br><br>3:19 CV 00957 |
| Plaintiffs, | |
| - against - | JUNE 20, 2019 |
| PACIFIC STATION, INC. d/b/a GLAMOUR RESTAURANT AND LOUNGE and d/b/a ENIGMA LOUNGE, GLAMOUR NIGHT CLUB, INC. d/b/a GLAMOUR NIGHT CLUB, and JORGE QUITO, | |
| Defendants. | |

Plaintiffs CLAUDIA SAMPEDRO, DESSIE MITCHESON, KIM COZZENS, DENISE TRLICA a/k/a DENISE MILANI, JESSICA BURCIAGA, JENNIFER ZHARINOVA, BRENDA LYNN GEIGER, CIELO JEAN GIBSON a/k/a CJ GIBSON, JESSICA KILLINGS, JESSICA ROCKWELL, JOANNA KRUPA, MARTA KRUPA, SANDRA VALENCIA and SARA UNDERWOOD, (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants PACIFIC STATION, INC. d/b/a GLAMOUR RESTAURANT AND LOUNGE and d/b/a ENIGMA LOUNGE, GLAMOUR NIGHT CLUB, INC. d/b/a GLAMOUR NIGHT CLUB, and JORGE QUITO (collectively "Defendants"), respectfully allege as follows:

- 1 -

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their restaurant and night club, Glamour Restaurant and Lounge in Stamford, Connecticut; their restaurant and night club, Enigma Lounge in Stamford, Connecticut; and Glamour Night Club, in Port Chester, New York (collectively, the "Clubs").

2.     As detailed below, Defendants' theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes, *inter alia*: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law and/or statutory right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of each Plaintiff's common law right of privacy and publicity as pertains to Defendants' unreasonably placing of each of them in a false light before the public; d) violation of the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat.§ 42-110b and/or New York Deceptive Trade Practices Act, G.B.L., § 349; and f) various common law torts, including conversion.

3.     In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Restaurant and Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant PACIFIC STATION, INC. ("PACIFIC STATION") is a corporation formed under the laws of the state of Connecticut, with its principal place of business located at 84 W Park Place, Stamford, Connecticut, 06901.  PACIFIC STATION owns both Glamour Restaurant and Lounge and Enigma Lounge, both in Stamford, Connecticut.

7.      According to publicly available records, defendant GLAMOUR NIGHT CLUB, INC. is a corporation formed under the laws of the state of New York, with its principal place of business located 114 North Main Street, Port Chester, New York, 10573.   GLAMOUR NIGHT CLUB, INC. owns Glamour Night Club in Port Chester, New York.

8.      Upon information and belief, defendant JORGE QUITO ("QUITO") is a resident of the state of Connecticut, and at all relevant times was the owner, principal and/or chief executive officer PACIFIC STATION and GLAMOUR NIGHT CLUB, INC. and in that capacity maintained operational control over Glamour Restaurant and Lounge and Enigma Lounge, including all advertising relating thereto, and Glamour Night Club, including all advertising relating thereto.

9.      Venue is proper in the United States District Court for the District of

Connecticut because Stamford, Connecticut is Defendants' principal place of business.

10.     A significant portion of the alleged causes of action arose and accrued in Stamford, Connecticut and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Stamford, Connecticut.

## PARTIES

### *Plaintiffs*

11.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12.     Plaintiff Dessie Mitcheson ("Mitcheson") is well-known professional model and a resident of Orange County, California.

13.     Plaintiff Kim Cozzens ("Cozzens") is well-known professional model and a resident of Santa Clara County, California.

14.     Plaintiff Denise Milani a/k/a Denise Trlica ("Trlica") is a well-known professional model and a resident of Los Angeles County, California.

15.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model and a resident of Fulton County, Georgia

16.     Plaintiff Jennifer Zharinova ("Zharinova") is well-known professional model and a resident of Los Angeles County, California.

17.     Plaintiff Brenda Lynn Geiger ("Geiger") is well-known professional model and a resident of Onondaga County, New York.

18.     Plaintiff Cielo Jean Gibson a/k/a CJ Gibson ("Gibson") is well-known professional model and a resident of Hillsborough County, Florida

19.     Plaintiff Jessica Killings ("Killings") is well-known professional model and a

resident of Los Angeles County, California.

20.     Plaintiff Jessica Rockwell ("Rockwell") is well-known professional model and a resident of Los Angeles County, California.

21.     Plaintiff Joanna Krupa ("Krupa") is well-known professional model and a resident of Miami-Dade County, Florida.

22.     Plaintiff Marta Krupa ("Krupa") is well-known professional model and a resident of Northampton County, Pennsylvania.

23.     Plaintiff Sandra Valencia ("Valencia") is well-known professional model and a resident of Medellin, Colombia.

24.     Plaintiff Sara Underwood ("Underwood") is well-known professional model and a resident of Multnomah County, Oregon.

*Defendants*

25.     According to publicly available records, PACIFIC STATION, INC. is formed under the laws of the state of Connecticut. During times relevant to this action, PACIFIC STATION, INC. operated Glamour Restaurant and Lounge, a restaurant and nightclub located at 84 West Park Place, Stamford, Connecticut, 06901.

26.     Upon information and belief, QUITO, in his capacity as principal of PACIFIC STATION, INC. maintains operational control over Glamour Restaurant and Lounge including all advertising relating thereto and did so during all times relevant to the allegations hereon.

27.     According to publicly available records, defendant ENIGMA LOUNGE is formed under the laws of the state of Connecticut. During times relevant to this action, PACIFIC STATION, INC. operated ENIGMA LOUNGE, a restaurant and nightclub

located at 82 West Park Place, Stamford, Connecticut 06901.

28. Upon information and belief, QUITO, in his capacity as principal of PACIFIC STATION, INC. maintains operational control over ENIGMA LOUNGE including all advertising relating thereto and did so during all times relevant to the allegations hereon.

29. According to publicly available records, defendant GLAMOUR NIGHT CLUB is formed under the laws of the state of New York. During times relevant to this action, GLAMOUR NIGHT CLUB, INC. operated GLAMOUR NIGHT CLUB, a restaurant and nightclub located at 114 North Main Street, Portchester, New York, 10573.

30. Upon information and belief, JORGE QUITO, in his capacity as principal of GLMAOUR NIGHT CLUB, INC. maintains operational control over GLAMOUR NIGHT CLUB including all advertising relating thereto and did so during all times relevant to the allegations hereon.

## FACTUAL ALLEGATIONS

31. As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

32. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

33. Each of the Plaintiffs' Images was misappropriated, and intentionally

altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Glamour Night Club, Enigma Lounge, or Glamour Restaurant and Lounge.

34.    In the case of every Plaintiff, such appearance was false.

35.    Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

*36.*    Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

**Plaintiffs' Backgrounds and Careers**

37.    Sampedro is a Cuban born model, mother and spokeswoman. Ms. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Ms. Sampedro has appeared in many catalogues, magazine editorials and has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Ms. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Ms. Sampedro is in a Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Ms. Sampedro is engaged to and has a baby with Green Bay's star defensive end Julius Peppers.

38.    That we know of, Sampedro is depicted in the photo in Exhibit "A" to

promote Glamour Restaurant and Lounge on its Facebook page. This Image was intentionally altered to make it appear that Sampedro either worked at Glamour Restaurant and Lounge, that she endorsed the business, or that she was otherwise associated or affiliated with the business.

39.     Sampedro has never been employed at Glamour Restaurant and Lounge, has never been hired to endorse Glamour Restaurant and Lounge, has never been otherwise associated or affiliated with Glamour Restaurant and Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.     Mitcheson competed for Miss Pennsylvania USA at age 18 and placed in the top ten.  Ms. Mitcheson soon became the Face of Playboy intimates, and the following year she became the Face of MGM Grand Las Vegas and Miss Pennsylvania Intercontinental. Ms. Mitcheson was also named Maxim magazine's Hometown Hottie, in which thousands of girls across the United States enter the yearly contest. That same year, Ms. Mitcheson was #100 on Maxim's Hot 100 list. She has graced the pages of multiple issues of Maxim, including a three page spread, two center folds, and landed the cover for the May 2014 Navy issue. Ms. Mitcheson's career as a TV personality, actress, and spokeswoman is booming. Ms. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her services and increased her daily quote substantially. Ms. Mitcheson has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes and J. Valentine. Ms. Mitcheson was the face of an

International video game.

41.     That we know of, Mitcheson is depicted in the photo in Exhibit "B" to promote Glamour Restaurant and Lounge on its Facebook. This Image was intentionally altered to make it appear that Mitcheson either worked at Glamour Restaurant and Lounge, that she endorsed the business, or that she was otherwise associated or affiliated with the business.

42.     Mitcheson has never been employed at Glamour Restaurant and Lounge, has never been associated or affiliated with Glamour Restaurant and Lounge, has never been hired to endorse Glamour Restaurant and Lounge, has never been otherwise associated or affiliated with Glamour Restaurant and Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

43.     Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

44.     That we know of, Cozzens is depicted in the photo in Exhibit "C" to promote Glamour Restaurant and Lounge on its Facebook. This Image was intentionally altered to make it appear that Cozzens either worked at Glamour Restaurant and Lounge, that she endorsed the business, or that she was otherwise associated or affiliated with the business.

45.     Cozzens has never been employed at Glamour Restaurant and Lounge, has never been associated or affiliated with Glamour Restaurant and Lounge, has never been hired to endorse Glamour Restaurant and Lounge, has never been otherwise associated or affiliated with Glamour Restaurant and Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.     Trlica is the world's most famous pinup model, who is frequently names one of the most searched women on the internet. At one point, her self-titled website was the most popular model website in the world. Trlica also became the winner of Miss Bikini World 2007. At 21, Trlica was given an opportunity to model for SPORTSbyBROOKS as a sports model and posed for such publications as PinupFiles.com. In 2009, Trlica was selected as the 99th most desired women in the world by Askmen Magazine. In 2011, she was ranked in the 5th position in championship NPC Excalibur Bikini held in Culver City, California. Similarly, in the year 2013, she was one of ten (10) most desirable women in the world. Milani's social media reach has hit almost 640,000 followers on Instagram, almost 6,500,000 Facebook likes, and over 120,000 followers on Twitter

47.     That we know of, Trlica is depicted in the photo in Exhibit "D" to promote Glamour Restaurant and Lounge on its Facebook page. This Image was intentionally altered to make it appear that Trlica either worked at Glamour Night Club and Glamour Restaurant and Lounge, that she endorsed the business, or that she was otherwise associated or affiliated with the business.

48.     Trlica has never been employed at Glamour Night Club and Glamour

Restaurant and Lounge, has never been associated or affiliated with Glamour Night Club and Glamour Restaurant and Lounge, has never been hired to endorse Glamour Night Club and Glamour Restaurant and Lounge, has never been otherwise associated or affiliated with Glamour Night Club and Glamour Restaurant and Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49.     Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Ms. Burciaga began modeling in 2005 when she submitted a few photos to Stuff Magazine. The magazine responded by flying her out to New York for a photo shoot. After Ms. Burciaga's first photo shoot, she won Stuff Magazine's "Neighborhood Knockout" contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports Fight Night Round 3 video game. Ms. Burciaga's popularity rose quickly and she began appearing in various magazines including Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine, and many others. Ms. Burciaga was the Playboy Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series The Girls Next Door. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Ms. Burciaga's social media reach has hit 1,600,000 followers on Instagram, over 44,000 Facebook likes, and 185,000 followers on Twitter.

50.     That we know of, Burciaga is depicted in the photo in Exhibit "E" to promote Glamour Restaurant and Lounge on its Instagram. This Image was intentionally altered to make it appear that Burciaga either worked at Glamour

Restaurant and Lounge, that she endorsed the Restaurant, or that she was otherwise associated or affiliated with the Restaurant.

51.    Burciaga has never been employed at Glamour Restaurant and Lounge, has never been associated or affiliated with Glamour Restaurant and Lounge, has never been hired to endorse Glamour Restaurant and Lounge, has never been otherwise associated or affiliated with Glamour Restaurant and Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

52.    Zharinova is a highly successful model and actress.  Some of her modeling clients include Aveda and Target, to name a few. Ms. Zharinova has done Runway, Print, Commercial, and Theatrical jobs for Great Clips, Chevy Malibu, 24 Hour Fitness, Caesar's Palace, Sprint, Levi's, Guess and many more.

53.    That we know of, Zharinova is depicted in the photo in Exhibit "F" to promote Enigma Lounge on its Facebook. This Image was intentionally altered to make it appear that Zharinova either worked at Enigma Lounge, that she endorsed the business, or that she was otherwise associated or affiliated with the Business.

54.    Zharinova has never been employed at Enigma Lounge, has never been associated or affiliated with Enigma Lounge, has never been hired to endorse Enigma Lounge, has never been otherwise associated or affiliated with Enigma Lounge, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

55.    Geiger is a hip-hop/eye candy model and actress who appeared with 8-time Grammy nominee rapper Lil Wayne in singer Keri Hilton's music video "Ms.

Officer". Ms. Geiger, known as the Jersey Gem, is perhaps best known for her work for

Glamour and an appearance on The Howard Stern Show in a Miss HTV March contest.

Ms. Geiger has been featured in numerous men's magazines such as *Show*, *Maxim* and

*Raw*. Ms. Geiger has been featured on numerous product campaigns, such as Primitive

Clothing, where she has her own custom skateboard decks which originally sold out but

are now back in production.

56.     That we know of, Geiger is depicted in the photo in Exhibit "G" to promote

Glamour Night Club on its Facebook and Instagram. This Image was intentionally

altered to make it appear that Geiger either worked at Glamour Night Club, that she

endorsed the Restaurant, or that she was otherwise associated or affiliated with the

Restaurant.

57.     Geiger has never been employed at Glamour Night Club, has never been

associated or affiliated with Glamour Night Club, has never been hired to endorse

Glamour Night Club, has never been otherwise associated or affiliated with Glamour

Night Club, has received no remuneration for Defendants' unauthorized use of her

Image, and has suffered, and will continue to suffer, damages as a result of same.

58.     Gibson is an American model who enjoys great success in her industry.

Ms. Gibson was the *Import Tuner* magazine Model Search winner. Ms. Gibson is

currently a model for the Falken Drift Team, and can be seen at Formula Drift events.

Ms. Gibson has also appeared in several magazines including *FHM*, *American Curves*

(as a cover model), *Supreme*, *MuscleMag International, Muscle & Fitness, Teeze,* and

in a Bowflex ad. Ms. Gibson has also modeled for the world's largest PWC Engine Re

manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater,

Florida. Ms. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Ms. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

59.     That we know of, Gibson is depicted in the photo in Exhibit "H" to promote Glamour Night Club on its Facebook. This Image was intentionally altered to make it appear that Gibson either worked at Glamour Night Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

60.     Gibson has never been employed at Glamour Night Club, has never been associated or affiliated with Glamour Night Club, has never been hired to endorse Glamour Night Club, has never been otherwise associated or affiliated with Glamour Night Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

61.     Killings has been nothing short of stunning ever since she hit the modeling scene. Her striking appeal has her appearing in every major magazine such as *SHOW, Blackmen, Straight Stuntin, Smooth, Mixed Magazine* and many more. Ms. Killings has also appeared in various music videos as the lead talent which include, Far East Movement ft. Snoop Dogg's video "OMG", Slim Thug and Baby Bash's video "Swananana", Big Sean and Chris Brown's video "My Last", Bow Wow's video "Pretty Lady", and Jay Sean ft. Nicki Minaj's video "2012". Ms. Killings has 1.2 million followers on Instagram, and 52,200 followers in Twitter.

62.     That we know of, Killings is depicted in the photo in Exhibit "I" to promote Glamour Night Club on its Facebook. This Image was intentionally altered to make it

appear that Killings either worked at Glamour Night Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

63.     Killings has never been employed at Glamour Night Club, has never been associated or affiliated with Glamour Night Club, has never been hired to endorse Glamour Night Club, has never been otherwise associated or affiliated with Glamour Night Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

64.     Rockwell is a model and actress. She is well known for Angry Video Game Nerd: The Movie (2014), Immigrants (2009), and A Que No Puedes! (2007). She has also appeared on films and tv shows such as, Sons of Anarchy, Entourage, Knight Rider, Heros and she has done music videos for Nickelback and Baby Bash.  Miss Rockwell has done prints as a catalog Model for Dreamgirl lingerie, No Fear Calendar, Shift clothing. She's modeled for Hooter's Magazine/Calendar, Extreme RC Car Magazine, and Racer X Magazine to name a few.

65.     That we know of, Rockwell is depicted in the photo in Exhibit "J" to promote Glamour Night Club on its Facebook. This Image was intentionally altered to make it appear that Rockwell either worked at Glamour Night Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

66.     Rockwell has never been employed at Glamour Night Club, has never been associated or affiliated with Glamour Night Club, has never been hired to endorse Glamour Night Club, has never been otherwise associated or affiliated with Glamour Night Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

67. Krupa is a model, actress, and dancer. She has appeared on magazine covers including *Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze*, and *Maxim*. Ms. Krupa was named the "Sexiest Swimsuit Model in the World" and *Maxim* ranked her #55 in its "2011 Hot 100". In 2004-2005, she was voted German's Maxim Model of the year. Ms. Krupa also models for ads with PETA and has appeared twice on the *Playboy* magazine cover. In addition, Ms. Krupa has appeared in the action film "Max Havoc: Curse of the Dragon," as well as the television show "Superstars" in June of 2009 and on Season 9 of "Dancing with the Stars." She is currently the head judge of Poland's "Next Top Model" since fall of 2010, and is a cast member for the reality TV show "The Real Housewives of Miami."

68. That we know of, Krupa is depicted in the photo in Exhibit "K" to promote Glamour Night Club on its Facebook. This Image was intentionally altered to make it appear that Krupa either worked at Glamour Night Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

69. Krupa has never been employed at Glamour Night Club, has never been associated or affiliated with Glamour Night Club, has never been hired to endorse Glamour Night Club, has never been otherwise associated or affiliated with Glamour Night Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

70. Krupa was a contestant on "Dancing with the Stars" in Poland and was a TV host on FHM South Africa Calendar. She has appeared in cover magazines worldwide such as 944, FHM, LA Direct, Naluda, and Bay Harbor San Fran. She does acting and singing now, with her single on iTunes called "Limbo". She has appeared on

13 episodes of The Real Housewives of Miami and she just finished a movie that is soon to be released, called "You Can't Have It" (Indy film, supporting role).

71.     That we know of, Krupa is depicted in the photo in Exhibit "L" to promote Glamour Night Club on its Facebook. This Image was intentionally altered to make it appear that Krupa either worked at Glamour Night Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

72.     Krupa has never been employed at Glamour Night Club, has never been associated or affiliated with Glamour Night Club, has never been hired to endorse Glamour Night Club, has never been otherwise associated or affiliated with Glamour Night Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

73.     Valencia was born in Medellin, Colombia and introduced to modeling at an early age. Growing up, Ms. Valencia competed in a number of pageants and studied full time as a fashion designer. She quickly established herself as one of Colombia's Top models and was highly sought after for international runway shows with leading designers. She has worked all over Latin America, Ecuador, Peru, The Dominican Republic, Mexico, and Venezuela and worked with clients such as Diesel, Americanino, Leonisa, Chevignon, Onde de Mar, and many more. Ms. Valencia became the contract face of Besame lingerie, which is an extremely lucrative and prestigious deal. She continues to be one of the most popular and successful Colombian models with a growing social media profile and a loyal following. She currently has 50,000 Instagram followers, over 71,000 Twitter followers, and 61,000 Facebook likes.

74.     That we know of, Valencia is depicted in the photo in Exhibit "M" to

promote Glamour Night Club on its Facebook. This Image was intentionally altered to make it appear that Valencia either worked at Glamour Night Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

75.    Valencia has never been employed at Glamour Night Club, has never been associated or affiliated with Glamour Night Club, has never been hired to endorse Glamour Night Club, has never been otherwise associated or affiliated with Glamour Night Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

76.    Underwood first appeared in *Playboy* in the pictorial "The Girls of the Pac 10" in the October 2005 issue (she also graced the cover). Ms. Underwood was the Playmate of the Month in the July, 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many *Playboy* videos, and not only has appeared as herself in the films *The House Bunny* (2008) and *Miss March* (2009) but also on episodes of such reality TV series as Kendra (2009), *The Girls Next Door* (2005) and *Bridget's Sexiest Beaches* (2009). Ms. Underwood has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's "Attack of the Show" for a couple of years. She has over 5 million social media followers.

77.    That we know of, Underwood is depicted in the photo in Exhibit "N" to promote Glamour Night Club on its Facebook. This Image was intentionally altered to make it appear that Underwood either worked at Glamour Night Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

78.    Underwood has never been employed at Glamour Night Club, has never

been associated or affiliated with Glamour Night Club, has never been hired to endorse Glamour Night Club, has never been otherwise associated or affiliated with Glamour Night Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

79.     Upon information and belief, Defendants operated, during the relevant time period, Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

80.     Upon information and belief, and in furtherance of its promotion their promotion of Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club, Defendants own, operate and control Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club social media accounts, including its Facebook, Twitter, and Instagram accounts.

81.     Defendants used Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club Facebook, Twitter, and Instagram accounts to promote Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club, and to attract patrons thereto.

82.     Defendants did this for their own commercial and financial benefit.

83.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked at Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club, that she endorsed

the business, or that she was otherwise associated or affiliated with the business.

84.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

85.     As Defendants were at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club and at no point have any of the Plaintiffs ever endorsed Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club, or otherwise been affiliated or associated with Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club.

86.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

87.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

88.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

89.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at

least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

90.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club by and through various marketing and promotional mediums including, without limitation, Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club's Twitter, Facebook, and Instagram.

91.     Defendants showcased Plaintiffs' Images on Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club's social media pages to create the false impression that Plaintiffs worked at Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

92.     Defendants did so to attract clientele to Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club, promote Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club, and thereby generate revenue for Defendants.

93.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club.

94.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

95.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

96.     This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendants' use of Plaintiffs' Images is that they are employees, endorse a night club, or are otherwise associated or affiliated with a night club.

97.     At no point were any of the Plaintiffs ever affiliated with Glamour Restaurant and Lounge, Enigma Lounge, Glamour Night Club, or Defendants.

98.     Each of Plaintiffs' Images was used without her consent.

99.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

100.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

101.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Clubs, Twitter, Facebook, or Instagram accounts.

102.    Defendants used Plaintiffs' Images without their consent, and without

providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

103. Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

### FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

87. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

88. The provisions of the Lanham Act, 15 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

89. As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club, or agreed to appear in Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club advertisements.

90. Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

91. Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club.

92. Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

93. Despite the fact that Defendants were at all times aware that the Plaintiffs

neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

94. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

95. Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

96. Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

97. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

98. The provisions of the Lanham Act, 15 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

99. Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club, or worked at, sponsored, or approved of Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club's goods, services or commercial activities.

100. This was done to promote and attract clientele to Glamour Restaurant and

Lounge, Enigma Lounge, and Glamour Night Club, and thereby generate revenue for the Defendants.

101.    Thus, this was done in furtherance of Defendants' commercial benefit.

102.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club, nor worked at, sponsored, or approved of Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club.

103.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

104.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

105.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
**(Right of Privacy: Appropriation of Likeness)**

106.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

107.    As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Connecticut law.

108.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

109.    Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club's related social media accounts as part of Defendants' advertising campaign.

110.    At all relevant times, the Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club's social media accounts were used and operated by Defendants for advertising and trade purposes.

111.    Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club's social media accounts were designed to attract business to the Club and generate revenue for Defendants.

112.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

113.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

114.	Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

115.	Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club.

116.	At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their social media account.

117.	Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any social media account, or on any other medium, in order to promote the Club.

118.	At no point did Defendants ever compensate Plaintiffs for its use of their Images.

119.	No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FOURTH CAUSE OF ACTION**
**(Right of Privacy: False Light)**

120.	Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

121.	As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Connecticut law.

122.	Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent and then portraying each Plaintiff in a false light in Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club

- 27 -

advertisements.

123. Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

124. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

125. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

126. Specifically, Defendants invaded and violated Plaintiffs' privacy and portrayed them in a false light by creating the false impression with the consumers that Plaintiffs were either working at Glamour Restaurant and Lounge, Enigma Lounge, or Glamour Night Club, endorsed same, were affiliated, associated, or otherwise connected with same, or had agreed to promote same.

127. Affiliation with a night club could lead to significant potential career and personal damage to a professional model because it could lead other clients to refuse to work with her or drop her as a model.

128. At all relevant times, the Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club's social media accounts were used and operated by

Defendants for advertising and trade purposes.

129.    Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club social media accounts were designed to attract business to the Club and generate revenue for Defendants.

130.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club.

131.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

132.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

133.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

134.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

<u>**FIFTH CAUSE OF ACTION**</u>
**(Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.§ 42-110b: Pacific Station, Inc. and Quito)**

135.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

136.    Defendants operated Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club's social media accounts in order to promote Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club, to attract clientele

thereto, and to thereby generate revenue for Defendants.

137.    As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Connecticut.

138.    Defendants published Plaintiffs' Images on Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club's social media accounts in order to create the false impression that Plaintiffs were either working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected with the Club.

139.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

140.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Connecticut law.

141.    Defendants advertising practices offends the public policy of Connecticut insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

142.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are working at Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night Club.

143.    Defendants advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are working at, endorse, or are otherwise affiliated with, Glamour Restaurant and Lounge, Enigma Lounge, and Glamour Night

Club.

144.    There are no benefits to Defendants advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

145.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

146.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

147.    As required by Conn. Gen. Stat. 42-110g(c), Plaintiffs have transmitted a copy of this Complaint to the Office of the Attorney General of the State of Connecticut.

<u>SIXTH CAUSE OF ACTION</u>
**(Violation of N.Y. Civ. Rights Law §§ 50-51: Glamour Night Club, Inc. and Quito)**

148.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

149.    As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on Glamour Night Club's website or related social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at Glamour Night Club, or endorsed the Club.

150.    At all relevant times, the Glamour Night Club website and social media accounts were used and operated by Defendants for advertising and trade purposes.

151.    The Glamour Night Club website and social media accounts were

designed to attract business to the Club and generate revenue for Defendants.

152. Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Glamour Night Club.

153. At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their website or social media account.

154. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Glamour Night Club.

155. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

156. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

157. Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, and are likewise entitled to exemplary and punitive damages.

158. In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

159. In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory

rights to privacy and publicity.

### SEVENTH CAUSE OF ACTION
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act: Glamour Night Club, Inc. and Quito)**

160.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

161.    Defendants operated Glamour Night Club's website and social media accounts in order to promote the Club, to attract clientele thereto, and to thereby generate revenue for Defendants.  As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

162.    Defendants published Plaintiffs' Images on Glamour Night Club's website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Club or endorsed the Club.

163.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Glamour Night Club.

164.    As Defendants were at all times aware, Plaintiffs never worked at Glamour Night Club, never endorsed the Club, and never had any affiliation with the Club.

165.    Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at Glamour Night Club, or endorsed the Club.

166.    As a result of Defendants' unauthorized and misleading publication of

Plaintiffs' Images on the Glamour Night Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

167.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

**EIGHTH CAUSE OF ACTION**
**(Negligence and *Respondeat Superior*)**

154.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

156.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

157.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

158.    Defendants further owed a duty of care to consumers at large to ensure

that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

159.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

160.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Connecticut law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

161.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

162.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Conversion)**

163.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

164.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

165.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

166.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Unjust Enrichment)

167.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

168.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

169.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either working at the Clubs, or endorsed the Clubs.

170.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

171.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

172.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their establishment.

173.    Plaintiffs have not been compensated for Defendants' commercial

exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

174.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Quantum Meruit)

175.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

176.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

177.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

178.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

179.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial, pursuant to CUPTA 42-110g(a);

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and pursuant to CUPTA, 42-110g(d);

(e) For such other and further relief as the Court may deem just and proper.

THE PLAINTIFFS, CLAUDIA SAMPEDRO, DESSIE MITCHESON, KIM COZZENS, DENISE TRLICA a/k/a DENISE MILANI, JESSICA BURCIAGA, JENNIFER ZHARINOVA, BRENDA LYNN GEIGER, CIELO JEAN GIBSON a/k/a CJ GIBSON, JESSICA KILLINGS, JESSICA ROCKWELL, JOANNA KRUPA, MARTA KRUPA, SANDRA VALENCIA and SARA UNDERWOOD,

/s/ John J. Radshaw III
John J. Radshaw III (ct19882)
900 Chapel Street, Suite 620
New Haven, CT 06510
203.654.9695 | 203.721.6182 f
jjr@jjr-esq.com

and


John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming*